OPINION
{¶ 1} Defendant-appellant, Steven Rogers, appeals a decision of the Butler County Juvenile Court finding that it did not have jurisdiction to modify a child support order issued in Oklahoma. We affirm the juvenile court's decision.
 {¶ 2} In February 2001, the Butler County Child Support Enforcement Agency registered a child support order in Butler County Juvenile Court on behalf of plaintiff-appellee, Catherine Young, and the state of Oklahoma. The child support order was issued in December 1999 by the District Court of Leflore County, Oklahoma, and required appellant to pay $125 per month. Appellant resides in Hamilton, Ohio, while appellee resides in Oklahoma with the parties' child.
 {¶ 3} Appellant is unemployed and receives social security disability benefits in the amount of $548 per month. The parties' child receives $183 per month in social security benefits through appellant's disability claim.
 {¶ 4} Appellant requested that the juvenile court magistrate, pursuant to Williams v. Williams, 88 Ohio St.3d 441, 2000-Ohio-375, credit the amount the parties' child receives through appellant's social security disability claim against appellant's child support obligation. The magistrate denied appellant's request, stating that it lacked jurisdiction to modify the Oklahoma support order.
 {¶ 5} Appellant filed objections to the magistrate's decision, which the juvenile court overruled. Appellant now appeals, assigning one error as follows:
 {¶ 6} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANT CREDIT FOR THE SOCIAL SECURITY DISABILITY BENEFIT HIS CHILD RECEIVES FROM DEFENDANT'S DISABILITY CLAIM TOWARD HIS SUPPORT OBLIGATION."
 {¶ 7} In this assignment of error, appellant argues that the juvenile court denied him due process and equal protection under the law when it refused to credit his child's social security benefits toward his child support obligation.
 {¶ 8} Our standard of review when reviewing a child support decision is abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,144. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 9} R.C. 3115.48 "determines when a registering Ohio tribunal gains jurisdiction to modify an order." Sowald and Morganstern, Domestic Relations Law (1997) 83, Section 23.43. R.C. 3115.48 is part of the Uniform Interstate Family Support Act (UIFSA) adopted by Ohio effective January 1, 1998. See id. at 64, section 23.31. R.C. 3115.48 provides in relevant part:
 {¶ 10} "(A) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if section 3115.50 of the Revised Code does not apply and after notice and hearing it finds either of the following applicable:
 {¶ 11} "(1) The child, the individual obligee, and the obligor subject to the support order do not reside in the issuing state, a petitioner who is a nonresident of this state seeks modification, and the respondent is subject to the personal jurisdiction of the tribunal of this state.
 {¶ 12} "(2) The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. * * *."
 {¶ 13} R.C. 3115.50 provides in relevant part:
 {¶ 14} "If all of the parties who are individuals reside in this state and the child does not reside in the issuing state, a tribunal of this state has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order. * * *."
 {¶ 15} Based on the above Ohio statutory provisions, the juvenile court lacked jurisdiction to modify the Oklahoma support order. R.C.3115.48(A)(1) is inapplicable because the child and the obligee live in Oklahoma, the issuing state. R.C. 3115.48(A)(2) is inapplicable because all parties have not given written consent authorizing an Ohio court to modify the order. Additionally, R.C. 3115.50 is inapplicable because "all of the parties who are individuals" do not reside in Ohio, and the child resides in the issuing state, Oklahoma. Therefore, under Ohio law, the juvenile court did not have jurisdiction to modify the Oklahoma order. See, also, Walker v. Amos (2000), 140 Ohio App.3d 32, 41.
 {¶ 16} Federal law, specifically the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), dictates the same result. Section 1738B, Title 28, U.S. Code provides in relevant part:
 {¶ 17} "(a) General rule. — The appropriate authorities of each State —
 {¶ 18} "(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and
 {¶ 19} "(2) shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (i).
 {¶ 20} "* * *
 {¶ 21} "(e) Authority to modify orders. — A court of a State may modify a child support order issued by a court of another State if —
 {¶ 22} "(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
 {¶ 23} "(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or
 {¶ 24} "(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.
 {¶ 25} "* * *."
 {¶ 26} This case clearly does not fall within the exceptions in subsections (e)(2)(A) and (e)(2)(B). With regard to (e)(2)(A), the child continues to reside in the issuing state, Oklahoma, which has continuing, exclusive jurisdiction over the support order it issued. With regard to (e)(2)(B), all parties have not consented to Ohio assuming continuous, exclusive jurisdiction over the support order. Subsection (f) is inapplicable because it addresses situations in which multiple child support orders exist. Subsection (i) is also inapplicable because it relates to registration requirements when the child does not live in the issuing state. Therefore, under federal law, the juvenile court did not have jurisdiction to modify the Oklahoma order. See, also, Paton v.Brill (1995), 104 Ohio App.3d 826, 832-833.
 {¶ 27} Appellant, who is indigent, argues that requiring him to travel to Oklahoma in order to seek a modification is a denial of his due process and equal protection rights. Appellant represents in his brief that he made attempts by phone and by mail to contact the relevant Oklahoma child support agency and request a modification. According to appellant, the agency never responded to his requests. Appellant also claims that he contacted a legal aid agency in Oklahoma to assist him in this matter. However, according to appellant, the legal aid agency could not represent him due to its previous representation of appellee. Additionally, the Butler County Child Support Enforcement Agency, at the magistrate's request, forwarded the magistrate's decision to the relevant Oklahoma child support agency. In the decision, the magistrate requested that the agency review appellant's child support order and consider whether an adjustment should be made.
 {¶ 28} According to state and federal law, Oklahoma, the state that issued the order, is the only state with jurisdiction to modify the order. Appellant cites no legal authority in support of his argument that his equal protection and due process rights were violated by the juvenile court. Although appellant does not make it clear in his brief, we assume that he intends to attack the constitutionality of the state and federal statutes which, by their plain language, clearly prevented the juvenile court from modifying the Oklahoma order.
 {¶ 29} Statutes are presumed to be constitutional unless proven beyond a reasonable doubt to violate a constitutional provision. Statev. Williams, 88 Ohio St.3d 513, 521, 2000-Ohio-428; Fabrey v. McDonald,70 Ohio St.3d 351, 353, 1994-Ohio-368. The party challenging the statute bears the burden of proving the unconstitutionality of the statute.Woods v. Telb, 89 Ohio St.3d 504, 511, 2000-Ohio-171.
 {¶ 30} Appellant did not argue that his due process rights were violated either in his objections to the magistrate's decision or at the juvenile court's hearing on those objections. Therefore, we need not address appellant's due process argument. A party cannot raise new issues or legal theories for the first time on appeal. See, e.g., Stores Realtyv. Cleveland (1975), 41 Ohio St.2d 41, 43; Chandler and Asssoc., Inc. v.America's Healthcare Alliance, Inc. (1997), 125 Ohio App.3d 572, 582.
 {¶ 31} We now address appellant's equal protection argument. In cases not involving a suspect class or a fundamental right, legislation need only bear a rational relationship to a legitimate governmental objective in order to satisfy equal protection. State ex rel. Vana v.Maple Hts. City Council (1990), 54 Ohio St.3d 91, 92, citing Clements v.Fashing (1982), 457 U.S. 957, 963, 102 S.Ct. 2836. Under rational-basis scrutiny, legislative distinctions are invalid only if they bear no relation to the state's goals and no ground can be conceived to justify them. Fabrey at 353.
 {¶ 32} "Suspect class" has been defined as one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307,313, 96 S.Ct. 2562. A suspect class has traditionally been defined as one involving race, national origin, religion, or sex. Adamsky v.Buckeye Local School Dist., 73 Ohio St.3d 360, 362, 1995-Ohio-298. Though it is not clear from appellant's brief, the class apparently being distinguished is indigent parents subject to child support orders in one state who move from that state and later wish to modify the order. This class is clearly not a suspect class.
 {¶ 33} This case also does not involve nor does appellant argue that it involves a fundamental right. Fundamental rights have been defined to include such rights as the right to vote, the right to procreate, and the rights guaranteed in the First Amendment. See, generally, Williams, 88 Ohio St.3d at 530.
 {¶ 34} Like the court in Paton, we find no constitutional defects in either R.C. 3115.48 or Section 1738B, Title 28, U.S.Code. See Paton,104 Ohio App.3d at 833. Both the state and federal statutes at issue bear a rational relationship to a legitimate governmental purpose. Both statutes were designed to avoid the constant relitigation of interstate child support issues and to prevent the issuing of inconsistent state court support orders. The statutes were also designed to make it less burdensome for the obligee to collect, enforce, and modify a support order. In cases such as this one, the statutes require any modification proceedings to occur in the issuing state, the state where the child and the obligee reside.
 {¶ 35} We find that the juvenile court did not abuse its discretion in finding that it did not have jurisdiction to modify the Oklahoma support order. The juvenile court simply followed the mandates of state and federal statutes. Additionally, appellant has failed to meet his burden of proving that the relevant state and federal statutes are unconstitutional. Accordingly, we overrule appellant's assignment of error and affirm the decision of the juvenile court.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.